**Thomas THORNBURG, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 77–1194.**

United States Court of Appeals, First Circuit.

Submitted Feb. 6, 1978.

Decided April 19, 1978.

Richard A. Grossman, Los Angeles, Cal., on brief for appellant.

Julio Morales-Sanchez, U.S. Atty., San Juan, P.R., Jerome M. Feit and Howard Weintraub, Attys., Dept. of Justice, Washington, D.C., on brief for appellee.

Before CAMPBELL, BOWNES and MOORE,* Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Over two and one-half years after his 1973 trial and conviction on drug-related charges,[1] Thomas W. Thornburg filed this motion to vacate sentence under § 2255 [2] or, in the alternative, for writ of error coram nobis, in the District Court for the District of Puerto Rico. His principal contention was and is that "[a]t least one and possibly as many as four jurors who were empaneled in the jury that rendered the verdict of guilt in this case were unable to understand the English language." Thornburg argues that this alleged defect deprived him of his fifth amendment right to due process and his sixth amendment right to a jury trial. The district court referred the matters raised in the motion to a magistrate who, after close examination of the records of trial and voir dire, and of preempanelment questionnaires that had been completed by the jurors, see 28 U.S.C. § 1869(h), recommended that "the petition be denied as frivolous, without a hearing." The district court in its order confirmed that conclusion, and dismissed the complaint. We affirm.[3]

Appellate counsel for Thornburg, who is different from trial counsel, maintains that in September of 1975, two years after trial, he, for the first time, became aware of information in the record and in the juror qualification forms that raised suspicions about the linguistic competence of three jurors and one alternate juror. His suspicions stemmed from (1) a short written exchange in Spanish between jurors and judge that occurred during the jury's deliberations; (2) the discovery that two jurors (including the alternate juror, who never served on the panel) had previously been disqualified from jury service because of inadequate English language skills; and (3) the discovery that two other jurors had written on their juror qualifications forms

---

* Of the Second Circuit, sitting by designation.

1. Thornburg and his codefendant, Roger Alluis, were convicted by a jury after trial in September, 1973, of conspiring to import, importation, and conspiring to possess a controlled substance (marijuana) in violation of 21 U.S.C. §§ 952(a)(2), 960, and 846. We affirmed that conviction on July 22, 1975, in an unpublished opinion, noted at 521 F.2d 1397 (1 Cir.). The Supreme Court denied certiorari. 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). It was in the petition for certiorari, filed after our affirmance, that Thornburg first raised these objections to the jurors' competence. This motion to vacate sentence on these grounds was filed June 23, 1976. (A similar motion was erroneously filed as part of the related criminal action on March 19, 1976, and was acted on by the district court on March 29, 1976 in an "order instructing movant to file the § 2255 proceedings as a civil action against the United States.")

2. Thornburg is currently on probation. His term is to expire on April 8, 1979.

3. Thornburg also maintains that he was entitled to discovery and a hearing on the question of the jurors' competence. Because we find as a matter of law on the record as presented both to this court and the district court that Thornburg waived his claim, § 2255 did not entitle him to a hearing or to discovery. See Miller v. United States, 564 F.2d 103, 105–06 (1st Cir. 1977). Further, Thornburg contends that Judge Torruella (who sat on the § 2255 motion after the trial judge, Judge Toledo, recused himself), was disqualified from sitting on the case because he would have to pass on Judge Toledo's credibility as a witness concerning the jurors' competence. Thornburg urges that all Puerto Rican federal judges were similarly disqualified. This contention is frivolous, even assuming the point is not moot in view of our finding that no hearing was required. Thornburg has made out none of the essential grounds for disqualification. See 28 U.S.C. §§ 144, 455(a); United States v. Cowden, 545 F.2d 257, 265–66 (1st Cir. 1976), cert. denied. 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Thornburg's ancillary claim that Judge Torruella was disqualified for his personal bias is equally without merit. United States v. Cowden, supra.

the answers "a little" and "a little—not to [*sic*] much" in response to the question whether they could "read, write, speak, and understand" the English language.

In Puerto Rico, where the customary language is Spanish, not English, prospective jurors are routinely examined by a district judge, in English, with an eye to their proficiency in spoken English, before being admitted to the venire. *See United States v. Ramos Colon,* 415 F.Supp. 459, 466–67 (D.P. R.1976); *United States v. Valentine,* 288 F.Supp. 957, 965, 968–69 (D.P.R.1968). This is done after they have submitted their juror qualification forms and have been provisionally approved by the clerk. *Cf. Plan Prescribing Method for Composition of Jury Wheels and Selection of Jurors* for the District of Puerto Rico ¶¶ 4, 6. That this was done here is not contested, although we do not have a record of the judge's examination since the pertinent transcripts were discarded, apparently in usual course, prior to Thornburg's filing of his motion.

The trial transcript does reflect, however, the voir dire that immediately preceded empanelment of the jury at Thornburg's trial. Each juror was individually asked in English to stand up, state his name, present address, present occupation and the name and address of his employer, or if retired, to state his former occupation and the length of his retirement. Each was asked if he or she was married, and, if so, to state the spouse's employment. All responded properly in English. They remained silent when asked as a group if they could think of "any other matters which [they] should call to the court's attention which may have some bearing on [their] qualifications as . . . juror[s]." As Thornburg concedes in his brief, "the state of the record in its present form may not now establish that the suspect jurors did not in fact understand English."

There is a "strong policy against the too-ready impeachment of jury verdicts on the basis of . . . afterthoughts suggested by a disappointed litigant," *Peterman v. Indian Motorcycle Co.,* 216 F.2d 289, 293 (1st Cir. 1954); *cf. Francis v. So. Pacific Co.,* 333 U.S. 445, 450–51, 68 S.Ct. 611, 92 L.Ed. 798 (1948). This policy finds expression in 28 U.S.C. § 1867, which directs that challenge to a petit jury in a criminal case may be made "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier . . . ." Section 1867 is the "exclusive means by which a person accused of a Federal crime . . . may challenge any jury . . . on the ground that such jury was not selected in conformity with the provisions of this title." 28 U.S.C. § 1867(e). (The "provisions of this title" include the requirement of proficiency in English. 28 U.S.C. § 1865(b)(2), (3)). Section 1867 has thus been construed as establishing mandatory filing requirements, in the absence of good cause shown. *E. g., United States v. Grismore,* 546 F.2d 844, 848 (10th Cir. 1976); *United States v. Noah,* 475 F.2d 688, 695 (9th Cir.), *cert. denied,* 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973); *see Kinty v. United Mine Workers,* 544 F.2d 706, 722–23 (4th Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *cf. United States v. Gates,* 557 F.2d 1086 (5th Cir. 1977). *But see United States v. Silverman,* 449 F.2d 1341 (2d Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972). Thornburg therefore bears a heavy burden when almost three years after his conviction he undertakes to show that the district court was obliged to hold a hearing or to grant his § 2255 motion. *Cf. United States v. Neary,* 552 F.2d 1184, 1189–90 (7th Cir. 1977), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1978). Under the existing circumstances we find no cause to excuse him from compliance with the time limits of section 1867.[4]

---

4. Even were we to assume that Thornburg was somehow justifiably delayed until September, 1975, in uncovering these purportedly suspicious facts, he would still fail to meet the section 1867 requirement that challenge be made "within seven days after the defendant discovered . . . the grounds therefor." Thornburg was aware of the grounds at least by the

Thornburg was represented at this trial by experienced members of the Bar of Puerto Rico. The records and transcripts relating to jury selection and competence, in particular the juror qualification forms and the now unavailable transcript of proceedings before the judge to determine proficiency, were then accessible to Thornburg and his counsel by statute, 28 U.S.C. § 1867(f); *Test v. United States,* 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975). Neither at the voir dire nor at trial did Thornburg challenge any juror's competency in English, nor did he request as part of the voir dire that any special, additional inquiry into the jurors' English skills be made. In response to defense counsel's request, the district judge had explicitly ruled at the start of the voir dire that he "would allow the defense counsel and the U.S. Attorney, if he so feels, to ask further questions to the members of the jury," although "the procedure that we follow in this court in selecting the jury is that [the judge] ask[s] the voir dire." Thornburg's counsel made neither inquiry nor objection at the time of the minor interchange between court and jury in Spanish. Further, no jury members felt prompted to inform the court that they or their fellows were having difficulty. *Compare United States v. Silverman, supra.* And the experienced trial judge, who is fluent in both English and Spanish, recorded no hesitancy about any of the jurors after questioning them at ·the voir dire and observing them at trial.

█ It is thus too late for Thornburg to raise these issues. All of the matters

which, almost three years later, have led him to question the linguistic proficiency of the jurors, could have been ascertained at the time of trial with relatively little effort. The potential for linguistic difficulty that now shocks the appellant would have been as apparent at that time as later. *See People of Territory of Guam v. Palomo,* 511 F.2d 255 (9th Cir. 1975). And the effect of this delay is that the transcript of the judge's examination of the veniremen is not available, making it very difficult to conduct a meaningful inquiry now.[5] In an analogous case turning on Fed.R.Crim.P. 12(b)(2) the Supreme Court said,

> "If [the rule's] time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment [or here, a new jury] prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be different."

*Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

---

time he raised the issue of linguistic competence in his petition for certiorari, filed in September, 1975, but made no motion before the district court until March 19, 1976, *see* note 1, *supra,* well after the close of the seven-day period allotted by the statute.

The statute directs that a defendant wishing to challenge compliance with selection procedures prescribed for empaneling a petit jury "may move to . . . stay the proceedings against him." A petition for certiorari to the United States Supreme Court hardly complies with the statutory procedure. Even if raising the objection in the certiorari proceeding were deemed sufficient to preserve the claim temporarily, Thornburg's motion remains tardy, since he first raised the claim in the district court

over two months after certiorari was denied on January 5, 1976.

5. It should also be noted that two alternative jurors were empanelled. Though Thornburg now challenges the competency of one alternate, had a timely objection to one or more of the jurors been made and sustained during the trial, the disqualified jurors could likely have been replaced, saving the enormous burden and expense of a new trial in a lengthy, complex case. Except to avoid clear injustice, we are not disposed to entertain challenges of this nature after the trial. Strong policy favors requiring such challenges to be made at the trial itself whenever possible.

We hold that under 28 U.S.C. § 1867, appellant has waived this objection by its untimely assertion. *United States v. Grismore, supra; United States v. Noah, supra; see Guam v. Palomo, supra; cf. United States v. Tropeano,* 476 F.2d 586 (1st Cir.), cert. denied, 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75 (1973).

*The denial of appellant's motion to vacate sentence is affirmed.*