882 F.2d 546
 UNITED STATES of America, Appellee,
v.
Jose CORPUS, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Marcos SEGUNDO-JUVINAO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Luis GONZALEZ, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Orlando TORO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Eliezer VALDERIANQUES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Jose DE LOS SANTOS-HIMITOLA, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Walber MEZA-NAVARRO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Pedro GUERRERO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Alfonso GONZALEZ, Defendant, Appellant.
 Nos. 88-1383--88-1391.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 27, 1989.
Decided Aug. 8, 1989.
 
 1
 Nydia Maria Diaz-Buxo, Caguas, P.R., by Appointment of the Court, for defendants, appellants Walber Meza-Navarro, Jose De Los Santos-Himitola and Alfonso Gonzalez.
 
 
 2
 Nydia Maria Diaz-Buxo, Caguas, P.R., by Appointment of the Court, on brief for defendant, appellant Pedro Guerrero.
 
 
 3
 Ayxa Rey Diaz, Hato Rey, P.R., by Appointment of the Court, for defendant, appellant Luis Gonzalez.
 
 
 4
 Julia M. Garriga, by Appointment of the Court, for defendants, appellants Orlando Toro and Eliezer Valderianques.
 
 
 5
 Julia M. Garriga, by Appointment of the Court, on brief for appellant Marcos Segundo-Juvinao.
 
 
 6
 William Arias, by Appointment of the Court, for defendant, appellant Jose Corpus.
 
 
 7
 Luis A. Plaza, Asst. U.S. Atty., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief for U.S.
 
 
 8
 Before BREYER and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.
 
 
 9
 CAFFREY, Senior District Judge.
 
 
 10
 This is a consolidated appeal on behalf of nine defendants who were the captain and crew of the Panamanian-registered vessel COLOSO II. After a two-day jury trial, the defendants were found guilty of aiding and abetting the possession of marijuana, with an intent to distribute it, in violation of 18 U.S.C. Sec. 2 and 46 U.S.C.App. Sec. 1903(a) (recodifying 21 U.S.C. Sec. 955a).[1] Defendants appeal from their convictions, arguing among other things, that the evidence adduced at trial was insufficient to establish that they were in knowing possession of the disputed marijuana. We affirm.
 
 I.
 
 11
 We recite the relevant facts in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); United States v. Campbell, 874 F.2d 838, 839 (1st Cir.1989). On September 23, 1987, the United States Navy frigate MCCLOY encountered the tugboat COLOSO II on the high seas. The vessel was not flying a flag and was riding "heavy," with its weight shifted forward.[2] After the Coast Guard officers on board the MCCLOY made repeated attempts to communicate with the COLOSO II, the captain, Jose Corpus, eventually responded. Corpus indicated that the vessel was travelling from Aruba to St. Thomas for the purpose of picking up a barge in St. Thomas. The vessel was navigating far off course from its alleged route, however, and Corpus was unable to provide the name of his agent in St. Thomas. He advised officers of the MCCLOY that the COLOSO II was a Panamanian vessel and provided its registration number. After Corpus denied Officer Rodriquez's request to board the tugboat, the MCCLOY requested a statement of no objection from the government of Panama.
 
 
 12
 While the officers were awaiting the statement of no objection, the MCCLOY pursued the COLOSO II, with spotlights directed at the stern of the tugboat and the surrounding water. At some point, numerous bales appeared floating in the water in the wake of the COLOSO II. Officer Rodriquez radioed the COLOSO II and asked the captain what was being thrown over the side of the tugboat. Corpus denied that the crew was throwing anything overboard. A small boat was lowered into the water from the MCCLOY and one of the officers retrieved three of the bales. The parties stipulated at trial that the three bales were marijuana.
 
 
 13
 The MCCLOY received the statement of no objection on the morning of September 24, 1987. After Officer Rodriquez communicated this to Corpus, the COLOSO II stopped and officers boarded the vessel and placed the captain and crew under arrest. During the officers' search of the vessel, they discovered a compartment with a metal hatch behind the "front forward most water tank." They observed soapy water covering the bottom of the compartment and observed a hole in the compartment which appeared to have been recently cut out. Wet residue was collected from the compartment and, after it was dried, the residue tested positive for marijuana. The living quarters of the COLOSO II included only seven places for people to sleep, although there were nine men aboard. Though the 85-foot tugboat was allegedly on route to pick up a barge in St. Thomas, there was insufficient equipment on board to perform such a tow. The only towing equipment discovered on board consisted of some rusty shackles and some wire cable which was in need of repair. No fenders, which would generally be required for a towing assignment, were found on board the COLOSO II. Appellants were charged in a September 30, 1987 Indictment with violations of 18 U.S.C. Sec. 2 and 46 U.S.C.App. Sec. 1903(a).
 
 II.
 
 14
 Appellants moved for a judgment of acquittal under Fed.R.Crim.P. 29 at the close of the government's case. They failed to renew the motion at the close of all the evidence, however, and therefore waived the traditional sufficiency of the evidence challenge. See United States v. Greenleaf, 692 F.2d 182, 185 (1st Cir.1982) ("The rule in this circuit is that a defendant who presents evidence and fails to renew a motion for acquittal is deemed to have waived his original motion."). In order to win a reversal based on insufficiency of the evidence, appellants must demonstrate that their convictions represent a "clear and gross" injustice. Id. We conclude that there is substantial evidence in the record upon which to base the convictions and they are therefore not clearly and grossly unjust.
 
 
 15
 Appellants argue at great length that the government failed to prove that the bales of marijuana observed floating in the water, in the wake of the COLOSO II, were in their possession. They contend that the bales must have been connected in some way with another vessel that was in the general vicinity of the MCCLOY and the COLOSO II late on the evening of September 23, 1989.
 
 
 16
 There was ample evidence adduced at trial to allow the jury reasonably to find that the numerous bales observed floating in the water were in appellants' possession on board the COLOSO II. There was testimony from a Coast Guard officer aboard the MCCLOY that he observed the bales "leaving the COLOSO II and hitting the water" over a period of approximately one hour and fifteen minutes. Officer Evans testified that he was able to count 256 bales while he was positioned on the MCCLOY's signal bridge and assisted by binoculars and spotlights. He further testified that members of the crew of COLOSO II were looking back at the MCCLOY throughout that period. Appellants submitted no concrete evidence to establish the proximity of the other vessel alleged to be somewhere in their general vicinity and there was no evidence that would suggest the bales were discarded from the MCCLOY.[3] Furthermore, once on board the tugboat, the officers discovered the empty compartment at the bow of the vessel which appeared to have recently been washed with soapy liquid. Residue was collected from the bottom of the compartment, which once dried, tested positive for marijuana. A jury could reasonably find that the government proved a sufficient nexus between the bales of marijuana and the empty compartment to establish that appellants were in possession of the drugs.
 
 
 17
 The appellants also argue that the government failed to prove that they all knowingly participated in the alleged crime. The government was required to prove that appellants associated themselves with the venture, that they participated in it as something they wished to bring about, and that they sought by their actions to make it succeed. United States v. Campa, 679 F.2d 1006, 1010 (1st Cir.1982) (citations omitted). Notwithstanding appellants' protestations to the contrary, knowing participation in a criminal venture may be inferred from circumstantial evidence. United States v. Molinares Charris, 822 F.2d 1213, 1218 (1st Cir.1987); United States v. Smith, 680 F.2d 255, 259 (1st Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983); United States v. Campa, 679 F.2d at 1010. The attendant facts and circumstances of the voyage in the present case strongly suggest knowing participation by the entire crew. The jury was, therefore, entitled to find that the government satisfied the requisite burden of proof as to all appellants.
 
 
 18
 A reasonable inference of knowing participation in a criminal venture by crew members on a vessel containing illegal cargo can be supported by a variety of factors. These factors include: the length of the voyage, United States v. Beltran, 761 F.2d 1, 6-7 (1st Cir.1985); the quantity of contraband on board the vessel, United States v. Cruz-Valdez, 773 F.2d 1541, 1546 (11th Cir.1985) (en banc); the close relationship of the crew, United States v. Lopez, 709 F.2d 742, 746-47 (1st Cir.), cert. denied, 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); the presence of extra crew members, United States v. Robinson, 843 F.2d 1, 9 (1st Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988); and the lack of an apparent legitimate purpose for the voyage, United States v. Molinares Charris, 822 F.2d at 1219. There was testimony at trial that suggests the COLOSO II left Panama on or about September 17 and stopped in Aruba before being boarded by officers of the MCCLOY on the morning of September 24, 1987. The bales of marijuana involved were estimated at a total weight of almost 12,800 pounds, with an approximate street value of $20,479,000. There were eight crew members and the captain aboard where a total of five or six would have been sufficient for the alleged towing assignment. Furthermore, no usable towing equipment was discovered on the COLOSO II. A reasonable conclusion would be that the large crew was necessary to load and unload the numerous bales of marijuana and that they were all well aware of the drugs on board. Another reasonable conclusion would be that those who organized the operation would not have permitted the appellants to be aboard unless they were all participating in the unlawful efforts. The jury was clearly entitled to disbelieve the appellants' version of the facts and to conclude that they all knowingly participated in the criminal venture.
 
 III.
 
 19
 Appellants next argue that the district court improperly admitted testimony regarding the marijuana residue discovered in the compartment at the bow of the COLOSO II. They contend that such testimony should have been excluded given that the officers who conducted the field tests failed to save the residue after completion of the tests. According to appellants, they had a right to be confronted with that evidence. The government argues in response that this challenge has no merit given appellants' inability to demonstrate "any specific prejudice suffered by not bringing to court the used field test kits containing the decomposed residue of marijuana." Brief for Appellee at 29. The government further argues that this challenge is foreclosed by the stipulation regarding the three bales of marijuana that were recovered from the water by officers of the MCCLOY. According to the government, appellants' position as to the residue contradicts the stipulation as to the bales.
 
 
 20
 We fail to see how the stipulation forecloses in any way the appellants' challenge on this issue. The stipulation covers only the substance identification of the three bales which were present in the courtroom at trial. Though the appellants stipulated to the chemist's report finding those bales to be marijuana, they dispute vigorously the source of those bales. Given that the stipulation does not address the source of the bales, but rather, the content of the bales, it does not foreclose appellants' challenge of the testimony about the marijuana residue on board the COLOSO II. This challenge questions the government's proof of the nexus between the marijuana bales and the COLOSO II, and therefore is not foreclosed by the stipulation.
 
 
 21
 In United States v. Picariello, 568 F.2d 222 (1st Cir.1978), this Court stated that "[w]hen evidence in a criminal trial is destroyed, special scrutiny must be undertaken to ascertain whether defendant's right to due process has been prejudiced." Id. at 227. The Court also outlined a three-pronged analysis to be applied in such cases: "First, was the evidence material to the question of guilt or the degree of punishment; second, was defendant prejudiced by its destruction; and third, was the government acting in good faith when it destroyed the evidence." Id. (citations omitted).
 
 
 22
 Applying this analysis to the present case establishes that appellants' due process rights were not prejudiced by the destruction of the disputed residue. Though the evidence of the residue and field testing was certainly material to the question of appellants' guilt, as proof of a nexus between the drugs and the COLOSO II, we cannot say that the destruction of the residue prejudiced appellants in any manner.[4] The initial tests proved negative for marijuana, but after the residue was dried, the tests immediately and repeatedly proved positive for marijuana. There is no indication that preservation of the tested residue would have been exculpatory for appellants. Absent any indication of specific prejudice suffered by appellants, we find no cognizable due process violation. Furthermore, there is no evidence in the record that suggests the evidence was destroyed in bad faith. The small amount of residue collected from the compartment and then dried for testing was used in the field tests and was then destroyed.[5] We accordingly reject this assignment of error.
 
 IV.
 
 23
 The appellants have raised various other points in this appeal. We will discuss them briefly. Appellants argue that the grand jury and petit jury institutions of the United States District Court for the District of Puerto Rico violate their right to be tried by a jury of their peers under 28 U.S.C. Sec. 1861 et seq. The appellants challenge the jury selection process generally because they contend that jurors in Puerto Rico are not proficient in the English language. They filed both a pretrial motion to dismiss the Indictment and a Rule 29 motion at the close of the government's case on this basis. No specific challenges regarding language proficiency were made, however, during the voir dire examination of the potential jurors. We reject appellants' generalized challenge on the basis of this Court's decision in Thornburg v. United States, 574 F.2d 33 (1st Cir.1978). The time to present this challenge was at voir dire, when defense counsel could have prepared additional questions for the potential jurors regarding their English language skills. Furthermore, appellants have not demonstrated that the "clear injustice" exception recognized in Thornburg applies in the present case. The record reflects that all of the jurors answered all of the district court's questions in English and remained silent when asked if there were any matters bearing on their ability to serve as jurors. The jurors also remained silent when asked whether anyone was unable to read, write, or understand the English language. We are not persuaded by appellants' challenge on this point.
 
 
 24
 Appellants next argue that they were not properly identified at trial by the government's witnesses. We fail to see any merit in this argument. Appellants were identified at trial by a member of the Drug Enforcement Agency task force who photographed the appellants upon their arrival in San Juan, Puerto Rico. The nine photographs were admitted into evidence at the start of the trial. The appellants were also identified by Officer Rodriquez who boarded the COLOSO II at the time of appellants' arrest. Officer Rodriquez identified the nine defendants as the captain and crew who were on board the COLOSO II at that time. We ascertain no defect in the government's identification process.
 
 
 25
 The appellants further contend that the district court misunderstood the nature and extent of the December 10, 1987 stipulation regarding the three bales of marijuana. They argue that the court misled the jury by an improper interpretation of the stipulation. We find no merit in this argument given that the district court read the exact language of the stipulation to the jury and emphasized the limits of the stipulation.[6] The court clarified specifically that the appellants were contesting the source of the bales and stated: "That ... should be very clear in your minds." Record at 73. There is no evidence in the record that the district court misinformed the jury as to the nature and extent of the stipulation.
 
 
 26
 Appellants further argue that the district court improperly allowed into evidence certain testimony regarding the medical treatment received by three of the appellants for back pain after their arrival in San Juan. They contend that this evidence was hearsay and unduly prejudicial, and therefore should have been excluded. The record reflects that upon objection by one of the defense counsel, the district court ruled that the initial testimony regarding treatment for back pain should be stricken and gave a cautionary instruction to the jury: "I'm going to strike the testimony as to medication. I'm going to instruct the Jury not to take that into consideration at this time. The evidence has no good value, in law. And therefore we should not take it." Record at 306-07. Later, defense counsel returned to the subject of back pain in her cross-examination of the witness, Officer Cruthis, and thereby opened the door to the government's reference to the topic on re-direct of the witness. We detect no error on the part of the district court given the court's cautionary instruction to the jury and given defense counsel's subsequent decision to return to the subject of back pain on cross-examination.
 
 
 27
 The next assignment of error is appellants' contention that there exist substantial variances between the crime charged in the Indictment and the crime proven at trial, such that the Indictment is rendered constitutionally deficient. As the United States Supreme Court stated in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), a constitutionally adequate indictment must " 'sufficiently apprise[ ] the defendant of what he must be prepared to meet.' " Id. at 763, 82 S.Ct. at 1046 (citations omitted). The indictment must contain the elements of the crime charged and inform the defendant of the charge against which he must defend. Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). There is no doubt that the Indictment in the present case satisfies this constitutional threshold. The fact that the Indictment charges a larger amount of drugs in appellants' possession than the amount proven at trial does not render the Indictment constitutionally infirm. See United States v. Miller, 471 U.S. 130, 145, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985) (a variance is not material where the government charges a large mail fraud scheme but proves a smaller one). The Indictment, reasonably read, fairly notified the appellants of the smaller amount of marijuana established at trial.
 
 
 28
 Six of the appellants also argue that they failed to receive notice before trial of the prior criminal record of appellants Corpus, Guerrero, and Gonzalez. They contend that this lack of notice precluded the possibility of requesting a severance, and therefore impaired their right to a fair trial. They are unable to show, however, that any evidence was admitted at trial as to these prior convictions. Without otherwise addressing the merit of this challenge, we conclude that appellants have not demonstrated any prejudice or injury suffered by the alleged lack of notice. Accordingly, we reject this challenge.
 
 
 29
 Finally, appellants raise two arguments regarding the imposition of sentences. The appellants argue that the district court improperly sentenced them under the new Sentencing Guidelines, applicable to crimes committed after November 1, 1987. See Pub.L. No. 98-473 Sec. 235, reprinted at 18 U.S.C. Sec. 3551 (effective date of Guidelines). The Sentencing Guidelines would not be applicable here given that the crime occurred in September of 1987. There is nothing in the record to support appellants' contention, however, and there is affirmative indication that the district court was well aware that the Guidelines are not applicable to these defendants.[7] Appellants Gonzalez and Guerrero also argue that their sentences, harsher than those imposed on other crew members, amount to cruel and unusual punishment. This challenge is without merit given that both Gonzalez and Guerrero had prior criminal records, and it was within the district court's discretion to take this into account in determining appropriate sentences.
 
 
 30
 We are also not persuaded by any of the appellants' remaining challenges on appeal.
 
 The judgment of the district court is
 
 31
 Affirmed.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 Section 1903(a) provides that "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C.App. Sec. 1903(a). Section 1903(c)(1)(C) explains that a vessel subject to the jurisdiction of the United States includes "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C.App. Sec. 1903(c)(1)(C)
 
 
 [2]
 There was testimony at trial that tugboats generally "come up and ride the waves" given that most of their weight is located in the after part of the vessel. In the present case, however, the COLOSO II was "pushing through the waves," suggesting that its weight was uncharacteristically shifted forward. Record at 58-59
 
 
 [3]
 The only evidence we have located in the record that estimates the location of the third vessel is the proffer of appellant Jose Himitola's testimony, which was read to the jury and provides in relevant part: "He also claims that the evening, before the boarding, there was another ship in the vicinity about 5 miles away from them." Record at 445. Even if the other vessel were only 1 mile away from the COLOSO II, it would still be very unlikely that the marijuana bales would suddenly begin to appear floating in the water in the wake of the COLOSO II. Furthermore, this version of the facts is contradicted by Officer Evans' testimony and the jury was entitled to disbelieve appellants' explanation
 
 
 [4]
 We also point out that there was enough independent evidence submitted at trial to show a connection between the marijuana bales in the water and the COLOSO II. As mentioned earlier, there was testimony at trial that an officer on board the MCCLOY observed bales being thrown overboard from the COLOSO II, and observed members of the crew peering out at the MCCLOY's pursuit. We disagree with appellants' claim that the residue was the only nexus the government could show between the marijuana bales and the COLOSO II
 
 
 [5]
 The better approach, of course, would be to preserve the evidence of the completed field tests even if the actual residue is used up in conducting the tests
 
 
 [6]
 The stipulation provided: "It is hereby stipulated that if the chemist from the Government would have come to testify in the instant case, she would testify that in her opinion as an expert the three bales introduced in evidence by stipulation with the Government are marihuana."
 
 
 [7]
 The transcript of the February 25, 1988 Sentencing Hearing includes the following reference by the district court: "Guidelines apply to facts occurring after November 1st, '87." Record at 18. The transcript also indicates that the district court later explained to one of the defense counsel: "Ms. Garriga, the guidelines don't apply to this case." Record at 21