[NOT FOR PUBLICATION]

 United States Court of Appeals
 For the First Circuit
 

No. 96-1661

 UNITED STATES,

 Appellee,

 v.

 JUAN R. CASTILLO-DE LOS SANTOS,

 Defendant - Appellant.

 

No. 97-1277

 UNITED STATES,

 Appellee,

 v.

 MARCOS COPLIN-BRATINI,

 Defendant - Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Daniel R. Dom nguez, U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 

 John R. Gibson,* Senior Circuit Judge, 

 and Lynch, Circuit Judge. 

 

 Edgardo Rodr guez-Quilichini, Assistant Federal Public 
Defender, with whom Lucien B. Campbell, Acting Federal Public 
  

* Of the Eighth Circuit, sitting by designation.

Defender, and Miguel A.A. Nogueras-Castro, Assistant Federal 
Public Defender, were on brief for appellant Castillo-de los
Santos.
 Carlos P rez-Olivo, by appointment of the Court, for 
appellant Coplin-Bratini.
 Jacabed Rodr guez-Coss, Assistant United States Attorney, 
with whom Guillermo Gil, United States Attorney, and Jorge E. 
Vega-Pacheco, Assistant United States Attorney, Chief, Criminal 
Division, were on brief for appellee.

 

 December 16, 1997
 

 -2-

 JOHN R. GIBSON, Senior Circuit Judge. Juan R. JOHN R. GIBSON, Senior Circuit Judge. 

Castillo-de los Santos and Marcos Coplin-Bratini appeal their

convictions for importing 24.5 kilograms of cocaine discovered

inside a ballast tank in their vessel, the Miss Gina. They were 

convicted on three counts: possessing cocaine with intent to

distribute, 21 U.S.C. 841(a)(1)(1994) and 18 U.S.C. 2 (1994);

importing cocaine, 21 U.S.C. 952(a)(1994) and 18 U.S.C. 2;

and possessing cocaine on board a vessel arriving in the United

States without the cocaine having been part of the cargo entered

in the manifest or part of the official supplies of the vessel,

21 U.S.C. 955 (1994) and 18 U.S.C. 2. Each argues that there

was insufficient evidence to convict him, and Castillo-de los

Santos argues that the court erred in admitting evidence that he

failed to file income tax returns. We affirm the convictions.

 The Miss Gina arrived in Puerto Rico with no cargo on 

September 11, 1995, after departing from the Dominican Republic.

The Miss Gina was a small, old commercial vessel owned by the two 

appellants.1 Castillo-de los Santos identified himself as the

captain of the vessel. The United States Customs Service

conducted an initial search of the vessel, and during the search

a trained dog alerted to a black bag belonging to Castillo-de los

Santos. The dog's reaction indicated that the bag had once

contained narcotics, but at the time of the customs search, the

  

1 Originally a third partner had owned a part interest in the
vessel; he relinquished ownership before the events at issue
here. 

 -3-

bag was full of anabolic steroids. The search revealed more

steroids, which the Customs Service seized. 

 The Customs Inspector left the ship, but returned and

informed Castillo-de los Santos that he had to wait for a Customs

Agent to arrive. By this time, Castillo-de los Santos was

preparing to pull the vessel out of the dock. He became agitated

and had to be ordered repeatedly to turn off his engines.

Coplin- Bratini was also on board the vessel. He also became

agitated and said that he had to leave the vessel because he had

ulcers. The Customs Agent arrived and arrested Castillo-de los

Santos for possession and importation of steroids. 

 On September 14, 1995, the Customs officials returned

and searched the vessel again. This time the inspectors searched

the cargo hold. They noticed that some of the metal hatches of

the water tanks in the hold had been painted so recently that the

paint was not yet dry. Also, the nuts and bolts of the hatch

were loose. In contrast, another hatch in the same area was not

painted, and the nuts were rusty, showing that they had never

been removed. The inspectors looked inside one of the tanks with

the newly painted hatch and found two metal boxes floating in a

diesel oil layer above the water inside the tank.2 The boxes

contained 24.75 kilograms of cocaine.

 At trial the government showed that the Miss Gina had 

only conducted seven trips during the two years that the
  

2 The government argued in closing that the layer of diesel oil
was meant to mask the smell of the drugs, so that the drugs would
not be detected by drug-sniffing dogs.

 -4-

appellants owned it, and that on each trip the vessel carried

cargo to the Dominican Republic, but returned to Puerto Rico

empty. The vessel's marine agent testified that it was common

for commercial vessels to carry cargo from the Dominican Republic

to "the islands"; after delivering their cargo to the islands,

such vessels would arrive at Puerto Rico empty, ready to pick up

a new cargo. However, the Miss Gina had not carried any cargo 

from the Dominican Republic. 

 Castillo-de los Santos, Coplin-Bratini, and their

partner had bought the vessel for $45,000. The government

introduced testimony and financial records of the ship's agent,

which it summarized as showing that during the two years of the

appellants' ownership, the Miss Gina had expenses exceeding 

$75,000, but grossed less than $35,000. The ship's marine agent

testified that during those two years, the ship had accumulated

more than $25,000 in bills to the agent, and that the bills had

been paid in cash on every occasion but one, in denominations of

twenties, tens, fives, and ones.

 The government also introduced Coplin-Bratini's last

five tax returns, which apparently showed an average income of

$15,000. Castillo-de los Santos had not filed any tax returns

with the Puerto Rico Treasury Department. 

 The wholesale value of the cocaine seized from the Miss 

Gina was $15,500 per kilogram, or a total of $379,750. The value 

of the cocaine once cut and prepared for retail distribution

would have been $4.9 million.

 -5-

 Coplin-Bratini testified. On cross-examination, the

government showed that he spent more money than he reported as

income in his income tax returns and that he had assets out of

proportion to his reported income level.

 Castillo-de los Santos also testified. He admitted

that, before the trip, he checked the water tanks to see that

they were working. He said he did not know who painted the

hatches and suggested that they were not painted when he left the

Dominican Republic, but perhaps were painted by the sailors

without his knowledge during the twenty-four hour voyage from the

Dominican Republic to Puerto Rico. 

 The jury found both men guilty. They were both

sentenced to 188 months imprisonment on each count, to be served

concurrently, five years supervised release, and a $50 monetary

assessment on each count.

 I.

 Both appellants contend that there was insufficient

evidence to convict them, specifically, that the government did

not prove they knew of the cocaine's presence on the vessel.

 We must uphold the convictions if the evidence, taken

in the light most favorable to the government, is adequate to

permit a rational jury to find each essential element of the

offenses beyond a reasonable doubt. See United States v. Valle, 

72 F.3d 210, 216 (1st Cir. 1995). All credibility determinations

must be resolved in the prosecution's favor, and among competing

inferences, we must draw the inference that best fits the

 -6-

prosecution's theory of guilt. Id. at 216-17. The evidence of 

knowledge in this case is circumstantial. However,

 [I]n the context of review of a motion
 for acquittal, no legal distinction
 exists between circumstantial and direct
 evidence. Furthermore, it is
 unquestioned that direct evidence need
 not be presented. Judicial authority
 teaches that the government can use
 circumstantial evidence as long as the
 evidence, viewed as a whole, is
 sufficient to warrant a reasonable jury
 to conclude that the defendant is guilty
 beyond a reasonable doubt.

United States v. Doe, 921 F.2d 340, 343-44 (1st Cir. 1990) 

(internal quotations and citations omitted).

 The circumstantial evidence that Castillo-de los Santos

and Coplin-Bratini knew that the cocaine was in the water tank is

not overwhelming. Cf. United States v. Piedrahita-Santiago, 931 

F.2d 127, 130-31 (1st Cir. 1991) (large cargo of marijuana on

small boat, vessel in poor repair and responded evasively to

attempts to contact it); United States v. Passos-Paternina, 918 

F.2d 979, 984-86 (1st Cir. 1990) (bizarre behavior of vessel in

storm, avoiding Coast Guard, evidence that crew had just removed

plates behind which drugs hidden, no valid registration, etc.),

cert. denied, 499 U.S. 982 (1991); United States v. Corpus, 882 

F.2d 546, 549-50 (1st Cir.) (as Coast Guard sought to board

tugboat, bales of marijuana suddenly appeared in the water,

tugboat lacked sufficient equipment on board to tow, etc.), cert. 

denied, 493 U.S. 958 (1989). However, giving the prosecution the 

benefit of all reasonable inferences, we conclude that the

evidence is sufficient.

 -7-

 First, Castillo-de los Santos and Coplin-Bratini were

the owners of the vessel and were on board the vessel when it

arrived in Puerto Rico, with eight men on board. Castillo-de los

Santos was the captain. The hatches to the tanks in which the

cocaine was hidden had been recently painted, so that the paint

was still sticky. Castillo-de los Santos admitted he had checked

the water tanks before leaving. Coplin-Bratini also said that he

had been down in the cargo hold the day before the ship left the

Dominican Republic. The senior special agent of the Customs

Service stated that in his experience investigating smuggling

cases, given such a large load of cocaine, somebody with control

over the ship would have to have knowledge that it was on board.

The captain would have control of the ship, and in this case the

captain and also the co-owner of the vessel were on board. The

vessel left the Dominican Republic empty, which supports an

inference that there was no commercial reason for the trip and

therefore the captain and owner must have known of an illicit

purpose. See Corpus, 882 F.2d at 550. Moreover, the drug- 

sniffing dog alerted to a bag claimed by Castillo-de los Santos,

indicating that the bag had earlier contained narcotics.

 The value of the cocaine on board, about $400,000

wholesale or $4.9 million retail, supports an inference of

knowledge, since we have before observed that it is unlikely the

owner of a valuable cargo would stow it in a vessel without the

knowledge of the vessel's captain. See Passos-Paternina, 918 

F.2d at 985. The partnership relation between Castillo-de los

 -8-

Santos and Coplin-Bratini supports an inference that they shared

knowledge about the use being made of their jointly owned vessel.

See United States v. Guerrero, 114 F.3d 332, 342 (1st Cir. 1997), 

cert. denied, 118 S. Ct. 320 (1997); Corpus, 882 F.2d at 550 

(knowledge established by circumstantial indicia, including close

relationship of crew); United States v. Guerrero-Guerrero, 776 

F.2d 1071, 1077 (1st Cir. 1985), cert. denied, 475 U.S. 1029 

(1986).

 Finally, the financial evidence that the vessel had

been operated at a loss since the appellants had owned it could

support the inference that they had intended to use the vessel

for smuggling. They paid substantial expenses to their marine

agent in cash -- not only in cash, but in very small

denominations. The government's expert on drug smuggling stated

that drug transactions were usually conducted in cash,

specifically in small denominations. See United States v. Ariza- 

Ibarra, 605 F.2d 1216, 1225 (1st Cir. 1979). There was evidence 

that Coplin-Bratini's living expenses exceeded the amount of

income he reported in his income tax returns and that his assets

were greater than what his reported income would warrant. The

financial evidence supports an inference that he had a practice

of supplementing his legal income with illegal income.

 These facts, taken together, would permit a jury to

find the essential element of knowledge of the cocaine. We must

uphold the jury's verdict. 

 -9-

 II.

 Castillo-de los Santos argues that the court erred in

admitting evidence that he had not filed tax returns for five

years. The purpose of this evidence, as in United States v. 

Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992), cert. denied, 507 

U.S. 943 (1993), was to show that he had greater income than he

was reporting to the government, and to suggest that his income

was therefore derived from an illegal source that he dared not

report.

 Castillo-de los Santos argues that the government did

not show that he was obliged to report the income, because he had

lived in the Dominican Republic since 1989 and had no such

obligation. He did not make this argument before the evidence

was admitted. His counsel objected to the use of the income tax

information, but he did not suggest to the court that Castillo-de

los Santos was not required to file a return. His counsel said

only, "[H]e's a very humble man who, like many people in our

country, for whatever reason, he did not file income tax." Not

until after the evidence had been admitted did Castillo-de los

Santos's lawyer attempt to establish on cross-examination that

Castillo-de los Santos did not live in Puerto Rico. Even then,

the agent being cross-examined steadfastly repeated that

Castillo-de los Santos had said he lived in Puerto Rico. At the

time the evidence was admitted, Castillo-de los Santos did not

inform the court of the factual predicate of his present

argument. We cannot require the district court to be

 -10-

clairvoyant. Because Castillo-de los Santos did not preserve the

objection he now urges, we review only for plain error. See 

Figueroa, 976 F.2d at 1453. There is no plain error here.  

 Castillo-de los Santos also contends that the evidence

suggested to the jury that he was guilty of another crime -- tax

evasion. He preserved this objection, so we review the admission

of the evidence for abuse of discretion. See id. at 1454. The 

court in this case instructed the jury that the appellants were

not charged with income tax violations and that the jury was not

to consider the evidence as showing "a potential problem with his

local tax returns." See id. (cautionary instruction minimized 

danger of prejudice). This instruction adequately channeled the

jury's use of the evidence and forestalled any prejudice. There

was no abuse of discretion. 

 We affirm the convictions. 

 -11-