**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Sergio M. CUEVAS–ESQUIVEL,**
**Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Alfredo HERRERA–VILLAREAL,**
**Defendant, Appellant.**

Nos. 89–1723, 89–1769.

United States Court of Appeals,
First Circuit.

Heard March 7, 1990.

Decided June 5, 1990.

Luis A. Medina–Torres, was on brief for defendant, appellant Alfredo Herrera–Villareal.

Carlos A. Perez, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before BREYER, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

This case stems from a United States District Court for the District of Puerto Rico jury verdict convicting Alfredo Herrera–Villareal and Sergio Cuevas–Esquivel of aiding and abetting in the possession with intent to distribute 1000 kilograms of marihuana on board a vessel subject to the jurisdiction of the United States in violation

of 46 U.S.C.App. § 1903(a), (c), (f) and 18 U.S.C. § 2.

## I. BACKGROUND

The evidence presented at trial established that on February 2, 1989, Cuevas–Esquivel was hired to bring a boat from Turbo to Barranquilla, Colombia. He testified that he was paid 12,000 Colombian pesos for this job, or about $33.00. Cuevas arrived at Turbo on February 3, at about 5:00 p.m. When Cuevas boarded the PECHE, there were several people already on board, including Herrera–Villareal. The boat immediately sailed for Barranquilla. Cuevas said that his job aboard the PECHE was to bail water and to take turns at the watch.

The PECHE developed engine trouble, ran out of fuel and was cast adrift in the Caribbean sea. On February 11, at about 2:15 a.m., the PECHE crew spotted lights about 3 miles away, and immediately sent out an SOS. A series of radio conversations between the USS MERRIMACK, passing as a cargo vessel, and the PECHE ensued. When asked for its name, the PECHE responded, "PECHE, PECHE, Barranquilla." After the initial contact between the USS MERRIMACK and the PECHE, the MERRIMACK radioed to another Coast Guard vessel, the USS JOHN HANCOCK, where the squadron commander of both vessels was located. Because it was night, the PECHE could not be visually located, and the commander decided to wait until morning to help them.

Just before dawn, the JOHN HANCOCK launched a helicopter to assist the USS MERRIMACK in locating the PECHE. When the vessel was located several videotapes of the PECHE and the surrounding waters were taken. Burlap bales were observed floating on the water near the PECHE. Officer Campbell, who was on the helicopter, testified that, before he started taping, he saw one bale being thrown from the PECHE. These tapes were shown to the jury.

Soon thereafter two boats were launched, one from the JOHN HANCOCK and another from the USS MERRIMACK.

The master of the PECHE prevented the MERRIMACK from boarding, to which the MERRIMACK party responded that they would obtain "permission from his country to board him." The boat from the JOHN HANCOCK arrived later, and boarded the PECHE against the wishes of the crew, without a statement of no objection. The JOHN HANCOCK had obtained permission from the Coast Guard Headquarters to board the vessel, determine its nationality and, if it turned out to be stateless, enforce United States law. After boarding, the JOHN HANCOCK determined that the boat had no name, home port, registration numbers, markings or flag, but did have an odor of marihuana. No claim of nationality was made. While boarding the vessel, six to eight inches of oily water and several empty barrels were observed, but no furniture, sleeping accommodations, fishing or cargo equipment were visible.

Although no marihuana was found on board the PECHE, 62 bales were recovered from the sea in the immediate vicinity of the vessel, for a total weight of 2,795 pounds. A field test performed on one bale revealed positive for THC, the active ingredient in marihuana. The videotape shows the bales drifting away from the boat, and also shows a tarp being thrown from the ship following exactly the same direction as the bales.

After receiving authorization, the PECHE was seized and its crew arrested for violation of United States laws. No authorization from the government of Colombia was requested since the US Coast Guard determined the PECHE to be stateless. The boat was seized approximately 150 miles north of Barranquilla, Colombia—an area outside the territory or territorial sea of any country.

Once the government rested its case, the defense brought a Fed.R.Crim.P. 29 motion for acquittal based on lack of subject matter jurisdiction over the vessel as well as on insufficiency of the evidence. The motion was denied then and was denied again when defense renewed it at the close of all the evidence.

## II. SUBJECT MATTER JURISDICTION OVER THE PECHE

■ Appellants argue that the Coast Guard failed to obtain a statement of no objection from Colombia before boarding the PECHE, and that no determination of statelessness had been made prior to boarding. They argue that when someone on board the PECHE responded "PECHE, PECHE, Barranquilla," he was in fact making a verbal claim of nationality for purposes of the statute, and, as such, it was necessary for the Coast Guard to verify with the government of Colombia whether PECHE was duly registered in Colombia. *See United States v. Potes*, 880 F.2d 1475 (1st Cir.1989). They argue that their later refusal to provide information about the vessel's nationality to the boarding party does not vitiate the first nationality claim.

Appellants next argue that the fact that the "PECHE, PECHE, Barranquilla" statement was made to the MERRIMACK, but not to the officers on the JOHN HANCOCK who actually boarded the vessel, is a meaningless distinction. They argue that since the MERRIMACK and the JOHN HANCOCK were working as a unit, there was no need for the PECHE to identify itself to each component of that unit in order to not be considered stateless. Finally, appellants contend that the Coast Guard officer's statement "we would seek permission from his country to board him" is an implicit recognition that nationality had been claimed.

■ To decide whether there was sufficient evidence to support a finding that the PECHE was a vessel without nationality we begin with a look at the applicable statute, 46 U.S.C.App. § 1903(a):

It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, ... to knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance.

A stateless vessel is defined as:

(A) a vessel aboard which the master or person in charge makes a claim of regis-try, which claim is denied by the flag nation whose registry is claimed;

(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel.

46 U.S.C.App. § 1903(c)(2).

A claim of nationality or registry includes exclusively possession and production of the vessel's nationality documents; flying its nation's flag; or a verbal claim of nationality by the master or person in charge of the vessel. 46 U.S.C.App. § 1903(c)(3). Stateless vessels are subject to the jurisdiction of the United States under 14 U.S.C. § 89, at least for the limited purpose of determining their true identity. *United States v. Rubies*, 612 F.2d 397, 403 (9th Cir.), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1979). Coast Guard actions are restricted to inquiries, boardings and limited searches designed to elicit information about the vessel's identification and registration, since under international law stateless vessels are subject to this type of examination. *United States v. Cortés*, 588 F.2d 106, 110 (5th Cir.1979).

We agree with the government's contention that the PECHE was stateless, and therefore subject to United States law. The evidence, when viewed in the light most favorable to the government, *see, e.g., United States v. Molinares–Charris*, 822 F.2d 1213, 1218 (1st Cir.1987), was sufficient to sustain the jury's verdict. We have long held that, in a criminal case, the evidence need not preclude every reasonable hypothesis inconsistent with guilt. *See United States v. Guerrero Guerrero*, 776 F.2d 1071 (1st Cir.1985).

In this case, it was reasonable for the jury to look at the evidence presented and to find that the defendants made no claim of nationality. When the original radio communications took place on February 11 in the early hours, there was no identification by the person who responded "PECHE, PECHE, Barranquilla." There was thus no claim of nationality by "the master or person in charge." 46 U.S.C.

App. § 1903(c)(2)(A), (B). Even if this statement could be construed as a claim of nationality—a matter on which we take no view—there was no reason to make such a claim at that point, as the person thought the MERRIMACK was a passing cargo vessel rather than the U.S. Coast Guard. Later on, an unnamed vessel which turned out to be the PECHE was sighted by a helicopter throwing bales off the deck. Attempts were made to obtain the name and nationality of the vessel, but no one identified himself as the master or person in charge, and the vessel had no name, no flag, or other identifying characteristics. In fact, the crew denied knowing who the master was, the name of the vessel and its nationality. Thus, the stage was set, by the very actions of that crew as well as the surrounding circumstances, for conclusion by the Coast Guard, and eventually the jury, that the PECHE was in fact a "stateless vessel" over whom the United States could exercise criminal jurisdiction pursuant to the Law of Nations and 46 U.S.C. App. § 1903(c)(2)(A), (B).

■ Appellants' reliance on *United States v. Potes*, 880 F.2d 1475 (1st Cir. 1989), is unfounded. There, the Coast Guard seized, on the high seas, a vessel with Honduras painted on the back. The master claimed the vessel to be Honduran and, after receiving warnings from the Coast Guard, the vessel raised the Honduran flag. At trial, the United States was unable to prove that Honduras had denied the claim of the vessel as being one of its own and thus the jurisdictional evidentiary link was found to be missing. Here, contrary to the *Potes* case, the theory has been advanced that the statement "PECHE, PECHE, Barranquilla," was, in and of itself, a claim of nationality. However, the vessel, when boarded, never claimed nationality; nor was its name provided; nor did anyone know who the master was. The mere statement is not enough to comply with the statute. No visual or verbal claim of nationality was made upon request of the boarding team, and the occupants denied knowing who the captain was, the name of the vessel, and its nationality. All this made the vessel one without nationality since the master failed, upon request of an officer of the United States, to make a claim of nationality or registry. 46 U.S.C. App. § 1903(c)(2).

## III. SUFFICIENCY OF THE EVIDENCE

■ In reviewing the sufficiency of the evidence, this court must consider whether the evidence, taken in the light most favorable to the government, together with all legitimate inferences, can support a guilty verdict from a rational trier of fact. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. McNatt*, 813 F.2d 499, 502 (1st Cir.1987). It is not necessary for the government to disprove every reasonable hypothesis of innocence, provided that the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Rivera Rodriguez*, 808 F.2d 886, 890 (1st Cir.1986). Credibility is an issue for the jury. *United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982) (crewmember's presence on vessel carrying large quantities of marihuana together with reasonable inferences, supports the conviction notwithstanding defendant's contention that he was a mere passenger).

■ Appellant Herrera argues:
The statute also requires proof of intent to distribute. The evidence presented was that La Peche was drifting, and that defendants had not [sic] food, water nor fuel to go anywhere. They had no navigational equipment except a compass which served no navigational purpose, no charts nor long range communication equipment. Therefore, even when the jury could have reasonably inferred that they had possessed the marijuana, they could not have gone anywhere with it. Therefore, they could not have distribute [sic] it.

All these are proper arguments to be made to the jury. Unfortunately, however, impossibility of success does not negate the intent to distribute and the jury could so find based on the record in this case.

■ Appellant Cuevas contends that the evidence presented at trial merely places

him on board the PECHE, but does not show that he knowingly associated himself with the criminal venture. He argues that there was no evidence of his ownership of the marihuana, that he had prior association with the other crew members, that he used marihuana, or that he participated in previous drug operations. According to Cuevas, there was no evidence that would indicate that he participated in a drug smuggling venture as something he wished to bring about. He argues that he was only a deck hand, was paid $33.00 for his efforts and had no means of wealth with which to contribute to the purchase of the cargo.

■ To sustain a conviction of aiding and abetting the government has the burden of proving that the appellant participated in the venture and that his participation was aimed at the venture's success. *United States v. Quejada–Zurique,* 708 F.2d 857, 859 (1st Cir.1983); *see United States v. Beltrán,* 761 F.2d 1, 6 (1st Cir. 1985). Here, the government has met its burden. The evidence presented at trial supports the jury's conclusion of guilt.

First, Coast Guard officers observed bales being thrown from the ship. Second, one bale retrieved from the water was dry, indicating that it had not been in the water very long. The videotape showed bales drifting very close to the vessel. Third, the vessel was only 30–40 feet long, the four crew members were all Colombians and they shared responsibilities for operation. This supports the inference that their relationships were close enough and the boat small enough for them to know about the criminal venture. *United States v. Luciano Pacheco,* 794 F.2d 7, 11 (1st Cir.1986); *see United States v. Steuben,* 850 F.2d 859 (1st Cir.1988). Fourth, there was a strong odor of marihuana emanating from the vessel.

Rationality supports the jury's finding. The jury could without undue strain conclude that it was simply incredible that with only four persons on board a relatively small vessel, on its way to "nowhere," with an open cargo hold, surrounded by a sea of floating marihuana bales which

some of the crew had been seen dumping, that all four were not participants in this criminal venture. It is entirely reasonable for the jury to conclude that conspirators, engaged in conduct which by its nature is kept secret from outsiders, would not allow the presence of innocent bystanders. *United States v. Luciano Pacheco,* 794 F.2d 7, 11 (1st Cir.1986). "Neither juries nor judges are required to divorce themselves of common sense," where, as here, the appellant's portrayal of himself as an innocent bystander is "inherently unbelievable." *United States v. Smith,* 680 F.2d 255, 260 (1st Cir.1982).

*Affirmed.*