No. 94-2303

UNITED STATES OF AMERICA,

Appellee,

v.

ALEJANDRO COLLADO,

Defendant, Appellant.



No. 95-1041

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL CRUZ-SORIANO,

Defendant, Appellant.



No. 95-1080

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL BRITO,

Defendant, Appellant.



APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Campbell, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Jeffrey E. Feiler, P.A. on consolidated brief for appellants. 
Miguel Brito on supplemental brief pro se. 
Jose A. Quiles, Assistant United States Attorney, Senior 
Litigation Counsel, Guillermo Gil, United States Attorney, and Jacabed 
Rodriguez Coss, Assistant United States Attorney on briefs for the 
United States.



February 1, 1996


CAMPBELL, Senior Circuit Judge. This is a consolidated 

appeal on behalf of three defendants who were aboard a vessel

that was intercepted for narcotics trafficking in Puerto

Rican waters. Following a four-day joint jury trial,

Alejandro Collado, Miguel Cruz-Soriano, and Miguel Brito were

found guilty of aiding and abetting the possession of cocaine

with intent to distribute, in violation of 21 U.S.C. 841(a)

and 18 U.S.C. 2.1 Each received a sentence of 235 months

of imprisonment to be followed by five years of supervised

release. On appeal they claim that the evidence was

insufficient to sustain the jury verdict. In a supplemental

brief filed pro se, defendant Brito asserts several other

errors that allegedly infected the trial and his sentence.

I. Background I. Background

We summarize the relevant evidence in the light

most favorable to the verdict. See United States v. DeMasi, 

40 F.3d 1306, 1310 (1st Cir. 1994), cert. denied, 115 S. Ct. 

947 (1995). In the early hours of January 27, 1994, the U.S.

Customs Service Air Branch dispatched two aircraft to the

southeast of St. John in the U.S. Virgin Islands after

 

1 A second count charging aiding and abetting the
possession of cocaine with intent to distribute, on board a
vessel of the United States and subject to its jurisdiction,
in violation of 46 U.S.C. 1903(a)(1), (a)(2)(C), & (f) and
18 U.S.C. 2, was dismissed following the defendants' motion
for judgment of acquittal pursuant to Fed.R.Crim.P. 29.

-3- -3-

learning that an air drop of contraband was to take place.

The plane making an air drop was not found, but a vessel was

detected in the suspected area, east of Puerto Rico, by a

Customs NOMAD maritime surveillance and search aircraft

equipped with a 360-degree radar ("Omaha 05"). Pilot Mark

Jackson first observed the vessel from his window at

approximately 3:33 a.m., aided by bright moonlight. He

testified that the vessel was traveling without lights and

quickly, leaving behind observable waves. The air

interdiction officer who assisted him, Leslie Robb,

immediately located the vessel using a forward looking

infrared (FLIR) system. This equipment senses heat energy

emitted by objects and produces black and white images which

can be recorded on videotape, as was done here.

Omaha 05 tracked the vessel for about forty-five

minutes until it reached Cayo Luis Pena, an uninhabited key

near the eastern coast of Puerto Rico. During this period

the vessel occasionally stopped; Officer Robb testified that

smugglers often use this tactic of going "dead in the water"

(DIW) in order to listen for surveillance aircraft and avoid

detection. Omaha 05 lost track of the vessel at least twice

during this period. Contact resumed within a few minutes

each time, according to the videotape and testimony by Robb.

After the vessel reached Cayo Luis Pena, Officer

Robb observed at least three people moving to and from the

-4- -4-

shore. The vessel departed seven to ten minutes later, at

about 4:30 a.m. It traveled westward without lights at a

gradually increasing speed. Omaha 05 tracked the vessel for

about forty minutes and then lost contact at 5:09 a.m. for

twelve minutes. Officer Robb explained at trial that he lost

the target vessel when it went DIW and his attention was

focused on the radar, instead of the FLIR (a manual tracking

system), in order to direct a Customs marine unit to the

target vessel. Robb temporarily was unable to detect any

vessel in the area. He then located the Customs marine unit

and a fuerzas unidas rapida accion (FURA) vessel of the 

Puerto Rican Police Department, and at 5:21 a.m. reacquired

the target vessel on the FLIR. The vessel was less than one

mile from the point where it was lost. Robb testified that

no other vessels were detected in the area.

Omaha 05, assisted by a FURA helicopter, guided the

Customs marine unit to intercept the target vessel. Pedro

Vicens, a special agent and criminal investigator on the

Customs boat, testified that four individuals2 were aboard

the twenty-four foot fishing boat which had two seventy-five

horsepower engines. The vessel had two large gas tanks built

into the area that customarily stores fishing equipment or

bait. Approaching the vessel, Vicens sensed a strong odor of

 

2 Diogenes Arturo Marcelino, in whose name the boat was
registered, entered a guilty plea before the trial of the
three defendants-appellants.

-5- -5-

gasoline. He soon observed that the boat was full of fluid

and gasoline: the fuel line had been cut, gas was coming from

the tank, and individuals aboard appeared to be bailing out

gasoline from the bottom of the vessel and moving as if to

wash something. He testified that washing the deck to

conceal any smell or residue of narcotics was a common

practice of drug smugglers. 

The four aboard were taken into custody and

transported along with the vessel to the police station at

Puerto Chico. Thereafter, Pilot Jackson and Officer Robb

accompanied Customs Agents Vicens and Hector Marte (among

others) by helicopter to Cayo Luis Pena, the uninhabited key

at which Omaha 05 had observed the vessel stop approximately

three hours earlier. There they searched the area where

movement had been detected. They found nine bales containing

261 kilograms of cocaine, as a laboratory test confirmed.

Upon return to the station at Puerto Chico, Marte

photographed the vessel and retrieved fibers of plastic, red

and yellow yarn, green fluorescent material, and plastic

bubble wrapping. A forensic chemist compared these samples

to ones taken from the wrapped bales found at Cayo Luis Pena

and testified that they had the same chemical composition.

Also found on the boat were life jackets, a knife, flare

guns, spark plugs, and damp cloth. 

-6- -6-

At the close of the government's case, the defense

moved for a judgment of acquittal on both counts pursuant to

Fed.R.Crim.P. 29. The district court denied the motion as to

count one and reserved ruling on the second count. The

defense rested without presenting evidence and again moved

for a judgment of acquittal. The following day the district

court again denied the motion as to count one, and granted it

as to count two. It instructed the jury on the charge of

aiding and abetting the possession of cocaine with intent to

distribute. A guilty verdict was returned against all

defendants.

II. Discussion II. Discussion

Defendants challenge the sufficiency of the

evidence to support their convictions. They claim that the

government failed to show the shared criminal intent required

for an aiding and abetting charge. They add that the

temporary losses of tracking on the FLIR system and the

weakness of the circumstantial evidence connecting them to

drug trafficking warrant a reversal of their convictions. 

In reviewing these claims, we consider the evidence

in the record as a whole, including all reasonable inferences

therefrom, in the light most favorable to the prosecution in

order to ascertain whether a rational jury could have found

defendants guilty beyond a reasonable doubt. See United 

-7- -7-

States v. Romero, 32 F.3d 641, 645 (1st Cir. 1994). In so 

doing, we defer to the jury's determinations of credibility

and respect its reasonable construction of the evidence. See 

id. We note that "no premium is placed upon direct as 

opposed to circumstantial evidence," and that "'individual

pieces of evidence, insufficient in themselves to prove a

point, may in cumulation prove it.'" United States v. Ortiz, 

966 F.2d 707, 711 (1st Cir. 1992) (citations omitted), cert. 

denied, 113 S. Ct. 1005 (1993). 

Defendants contend that the government had to prove

that they had a shared criminal intent and were not merely

present at or aware of a criminal act. See Nye & Nissen v. 

United States, 336 U.S. 613, 619 (1949) (a defendant who aids 

and abets must "in some sort associate himself with the

venture, . . . participate in it as in something that he

wishes to bring about") (citing United States v. Peoni, 100 

F.2d 401, 402 (2d Cir. 1938)); United States v. Francomano, 

554 F.2d 483, 486 (1st Cir. 1977) ("mere presence at the

scene and knowledge that a crime was to be committed" is

insufficient to show aiding and abetting) (citation omitted).

They assert that no proof was offered on the relationship

between them and the apparent captain (in whose name the boat

was registered), between the four aboard and the three

persons observed offloading at Cayo Luis Pena, or between the

defendants themselves. Moreover, no connection to any plane

-8- -8-

making an air drop was ever established. Defendants add that

upon interception of the vessel, they permitted Agent Vicens

to board and cooperated fully.

The record, considered as a whole, does not support

defendants' argument. The knowledge element of a charge

under 

841(a) "can rarely be established with direct evidence."

United States v. Gonzalez-Torres, 980 F.2d 788, 791 (1st Cir. 

1992). Circumstantial evidence has been held to justify a

finding of criminal intent on facts quite similar to the

instant case: i.e., where only a few individuals are aboard a 

small boat, large or extra gas tanks are in place (rather

than more typical bait or fishing equipment), the vessel

periodically runs without lights and goes DIW, an FLIR system

tracks the vessel to the site where drugs are later found,

traces of material used to wrap the cocaine are found on

board, and a legitimate alternative purpose for the voyage

appears lacking. See, e.g., United States v. Morales- 

Cartagena, 987 F.2d 849, 852 (1st Cir. 1993); United States 

v. Alvarado, 982 F.2d 659, 661-662 (1st Cir. 1992); United 

States v. Cuevas-Esquivel, 905 F.2d 510, 515 (1st Cir.), 

cert. denied, 498 U.S. 877 (1990); United States v. Corpus, 

882 F.2d 546, 550 (1st Cir.), cert. denied, 493 U.S. 958 

(1989) and 497 U.S. 1009 (1990). A jury could reasonably 

infer from the evidence that each of the defendants possessed

-9- -9-

the requisite criminal intent and aided and abetted the

accomplishment of the offense as charged.3

Defendants attempt to poke several other holes in

the prosecution's case: 1) no plane making an air drop was

found; 2) the intercepted vessel itself contained no

contraband; 3) the residue particles found on board could

have been tracked on by Agent Marte after he helped to

collect the cocaine bales from Cayo Luis Pena, especially as

he did not note the presence of any residue when he

intercepted and boarded the vessel; 4) Agent Vicens did not

document any cut fuel line or gasoline on deck in his report

of the incident; 5) no description of the vessel is provided

in the audio/videotape; 6) the vessel initially tracked was

said to be traveling toward Fajardo on the east side of

Puerto Rico, whereas Cayo Luis Pena is northward; and 7) the

FLIR system lost the suspected vessel at least three times,

including once for a twelve-minute period, after which the

vessel was found within one mile of its previous location

despite testimony as to its capacity for rapid travel. 

 

3 As the government notes, defendants do not
specifically challenge the sufficiency of the evidence
relating to an intent to distribute. Proof beyond a
reasonable doubt of knowing possession for the purpose of
distribution is required for a charge under 841(a). See 
United States v. Garcia, 983 F.2d 1160, 1164 (1st Cir. 1993). 
To the extent that defendants' challenge was meant to
incorporate this aspect of intent, our holding is unchanged.
Their intent to distribute can reasonably be inferred from
the large quantity of cocaine (261 kilograms), cf. id. at 
1165, which was deposited on the uninhabited key.

-10- -10-

We again find the above argument unpersuasive when

assessed in light of the record as a whole. With respect to

the last three points alleging misidentification of their

vessel, the jury was free to believe the testimony of Officer

Robb, who operated the radar and FLIR system and detailed the

process by which Omaha 05 tracked the vessel. The jury

viewed much of the videotape, including the twelve-minute

period when the Omaha 05 lost the vessel. Its apparent

decision to credit Robb's testimony that no other non-

governmental vessels were in the area at the time and that

the same vessel was subsequently located is a plausible view

of the evidence. 

The jury also could have reasonably concluded that

the vessel changed direction at some point in its voyage.

The absence of contraband aboard is not fatal to the

prosecution's case, given substantial evidence connecting the

vessel to the cocaine (e.g., the videotape, the positive 

match of wrapping samples, the departure of the vessel from

Cayo Luis Pena without lights at an increasing speed, and the

evidence of extra fluid on the vessel bottom and the crew

members' washing motions). Cf. Cuevas-Esquivel, 905 F.2d at 

512, 515 (affirming conviction where no contraband was found

aboard but a videotape showed a tarp being thrown from the

ship and bales floating nearby); Corpus, 882 F.2d at 549-550 

(same, where bales were observed being thrown from the ship

-11- -11-

and floating nearby, no other vessel was shown to be in the

area, and the vessel bottom appeared to have been recently

washed). Nor do defendants' other contentions warrant

disturbingthejury'sassessment oftheoverallevidence presented.

It is well established that the government need not

"disprove every reasonable hypothesis of innocence, provided

that the record as a whole supports a conclusion of guilt

beyond a reasonable doubt." Cuevas-Esquivel, 905 F.2d at 

514; Gonzalez-Torres, 980 F.2d at 790. We find that 

sufficient evidence was presented to sustain the guilty

verdicts here.4

The judgments of conviction are affirmed. 

 

4 We have considered, in addition, the separate
contentions made by defendant Brito in his brief. We find
these contentions to be without merit. 

-12- -12-