<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2383

                         UNITED STATES,
                           Appellee,

                               v.

                     MANUEL JULIO CARDALES,
                     Defendant, Appellant.

                      ____________________

No. 97-2384

                         UNITED STATES,
                           Appellee,

                               v.

                   ROBINSON RAFAEL HERNANDEZ,
                     Defendant, Appellant.

                      ____________________

No. 97-2385

                         UNITED STATES,
                           Appellee,

                               v.

                    ARKEL HAWKINS PETERSON,
                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                      ____________________

                             Before

                     Lynch, Circuit Judge,

Hall, Senior Circuit Judge,

                   and Lipez, Circuit Judge.

                     _____________________

    Edgardo Rodrguez-Quilichini, Assistant Federal Public
Defender and Vctor P. Miranda-Corrada, by appointment of the
Court, with whom Joseph C. Laws, Jr., Federal Public Defender, were
on joint brief, for appellants Manuel Julio Cardales and Robinson
Rafael Hernndez.
    Linda Backiel for Arkel Hawkins Peterson.
    Jonathan L. Marcus, Attorney, Department of Justice, with whom
Guillermo Gil, United States Attorney, Timothy Faerber, Aixa
Maldonado and Jos A. Quiles, Assistant United States Attorneys,
were on brief, for appellee.

                      ____________________

                      February 26, 1999
                      ____________________

         HALL, Senior Circuit Judge.  Manuel Julio Cardales
("Cardales"), Robinson Rafael Hernndez ("Hernndez"), and Arkel
Hawkins Peterson ("Peterson") appeal their convictions for aiding
and abetting each other in the possession with intent to distribute
marijuana on board a vessel subject to the jurisdiction of the
United States in violation of 46 U.S.C. app.  1903(a) and 18
U.S.C.  2.  The district court sentenced Cardales to 120 months in
prison, Hernndez to 78 months in prison, and Peterson to 121
months in prison.  Peterson appeals his sentence.  We have
jurisdiction under 28 U.S.C.  1291 and 18 U.S.C.  3742(a), and we
affirm.
                             FACTS
         At approximately 5:40 p.m. on May 31, 1996, a helicopter
crew from the U.S.S. GROVES spotted a "go-fast" boat, the CORSICA,
traveling at a very high rate of speed in waters approximately 150
miles south of Puerto Rico.  The helicopter crew attempted to
contact the boat by radio and by hand signal, but all efforts to
communicate with the CORSICA were unsuccessful even though the
CORSICA's radio was working.  The defendants evaded the helicopter
for over two hours, turning off the CORSICA's navigation lights
when it grew dark.  Eventually, the helicopter crew was able to
steer the CORSICA toward the GROVES.  When the defendants spotted
the GROVES, they turned the CORSICA in the opposite direction and
fled.  When the CORSICA was close enough, the crew from the GROVES
launched a rigid hull inflatable boat ("RHIB") to approach the
CORSICA, but the RHIB's engine failed before it could make contact.  
While the crew from the GROVES launched a second RHIB, the
helicopter returned to the GROVES for refueling.  As a result of
the first RHIB's breakdown and the helicopter's refueling, the
CORSICA was out of sight for approximately fifteen minutes.
         When the second boat reached the CORSICA, Peterson
identified himself as the captain, and claimed the CORSICA was a
Venezuelan vessel that had departed from Colombia to search for a
lost boat.  Peterson refused to allow the Coast Guard crew to board
the CORSICA until the Venezuelan government consented.  The Coast
Guard crew sought authorization to board the CORSICA from
Venezuela, but the Venezuelan government was unable to access the
ship registry database at that time.  The Coast Guard crew boarded
the CORSICA pursuant to a statement of no objection from Coast
Guard headquarters, and shortly thereafter the Venezuelan
government authorized the Coast Guard to board and search the
CORSICA under the unverified assumption that the CORSICA was
registered in Venezuela.  When the officers searched the CORSICA,
they noted that the CORSICA's radio was working, the forward cabin
smelled of fuel, the carpet had indentations in it as if heavy
objects had been resting on it, and pieces of what appeared to be
burlap were woven into the carpet.  However, the officers did not
find any contraband, and returned to the GROVES.
         Shortly after the officers returned to the GROVES,
lookouts on board the GROVES noticed over twenty bales floating in
the water.  The crew from the GROVES recovered seventeen of the
bales, which contained over 1080 pounds of marijuana.  The
marijuana was held in cardboard boxes, wrapped in plastic and tape,
and marked with a yellow dye.  The officers returned to the
CORSICA, reboarded pursuant to the Venezuelan government's previous
consent, and conducted a second search.
         During the second search, officers found packing material
that matched the material found in the bales recovered by the
GROVES, yellow dye stains on the carpet that matched the yellow dye
markers on the marijuana, and what appeared to be a marijuana stem
that tested positive for THC, a chemical found in marijuana.  The
officers arrested the defendants, and the CORSICA was piloted to
Puerto Rico.  The officer who piloted the CORSICA noticed that the
CORSICA skipped across the water as he drove it, which contrasted
sharply to the CORSICA's bow-heavy condition during the chase.
         On June 5, 1996, the Venezuelan government notified the
State Department that the CORSICA was indeed of Venezuelan
registry, reauthorized the boarding and search of the CORSICA, and
authorized the arrest of and application of U.S. law to the
CORSICA's crew.  Cardales, Hernndez, and Peterson were convicted  
of aiding and abetting each other in possessing with the intent to
distribute marijuana while on board a vessel subject to the
jurisdiction of the United States in violation of 46 U.S.C. app.
1903(a).  The defendants appealed.
                           DISCUSSION
                               I
         The Maritime Drug Law Enforcement Act ("MDLEA") makes it
"unlawful for any person . . . on board a vessel subject to the
jurisdiction of the United States . . . to possess with intent to
manufacture or distribute, a controlled substance."  46 U.S.C. app.
1903(a).  One of the MDLEA's definitions of a vessel subject to
the jurisdiction of the United States is "a vessel registered in a
foreign nation where the flag nation has consented or waived
objection to the enforcement of United States law by the United
States."  Id.  1903(c)(1)(C).
         In this case, the defendants were convicted of aiding and
abetting each other in the possession with intent to distribute
marijuana on board a vessel, the CORSICA, subject to the
jurisdiction of the United States.  The CORSICA was registered in
Venezuela, and the government of Venezuela consented to the
application of United States law to the defendants.  The government
therefore satisfied the jurisdictional requirements of the MDLEA.
         The defendants contend that the Fifth Amendment Due
Process Clause requires the government to prove a nexus between
their criminal conduct and the United States in a prosecution for
violating the MDLEA.  Although the MDLEA does not explicitly
contain a domestic nexus requirement, the Ninth Circuit has read
into the MDLEA a nexus requirement with respect to foreign-
registered vessels.  See United States v. Klimavicius-Viloria, 144
F.3d 1249, 1257 (9th Cir. 1998) (requiring government to prove that
offense conduct is likely to have effects in United States); United
States v. Davis, 905 F.2d 245 (9th Cir. 1990) (requiring sufficient
nexus between criminal conduct and United States such that
application of U.S. law would not be arbitrary or unfair).  This
nexus requirement, however, was specifically rejected by the Third
Circuit.  See United States v. Martnez-Hidalgo, 993 F.2d 1052 (3d
Cir. 1993) (reasoning that statute does not contain nexus
requirement, and that Congress intended MDLEA to override
international law to extent nexus might be required).  We decide
today that due process does not require the government to prove a
nexus between a defendant's criminal conduct and the United States
in a prosecution under the MDLEA when the flag nation has consented
to the application of United States law to the defendants.   
    To satisfy due process, our application of the MDLEA must
not be arbitrary or fundamentally unfair.  See Davis, 905 F.2d at
248-49; see also Martnez-Hidalgo, 993 F.2d at 1056.  In
determining whether due process is satisfied, we are guided by
principles of international law.  See Davis, 905 F.2d at 249 n.2.  
Under the "territorial principle" of international law, a "state
has jurisdiction to prescribe and enforce a rule of law in the
territory of another state to the extent provided by international
agreement with the other state."  United States v. Robinson, 843
F.2d 1, 4 (1st Cir. 1988).  In Robinson, we decided that the United
States had jurisdiction over a Panamanian vessel stopped over 500
miles off shore because the Panamanian government authorized the
United States to apply U.S. law to the persons on board the vessel.  
See id. (recognizing informal authorization as valid agreement for
purposes of territorial principle, and affirming conviction under
21 U.S.C.  955a, statutory precursor to MDLEA).  In this case, the
Venezuelan government authorized the United States to apply United
States law to the persons on board the CORSICA.  Therefore,
jurisdiction in this case is consistent with the territorial
principle of international law.
    In addition, under the "protective principle" of
international law, a nation is permitted "to assert jurisdiction
over a person whose conduct outside the nation's territory
threatens the nation's security."  Robinson, 843 F.2d at 3; seeUnited States v. Romero-Galue, 757 F.2d 1147, 1154 (11th Cir.
1985); United States v. Pizzarusso, 388 F.2d 8, 10 (2d Cir.)
(characterizing protective principle as applying only to conduct
generally recognized among nations as a crime), cert. denied, 392
U.S. 936 (1968).  Consistent with this principle, Congress
specifically found in the MDLEA that "trafficking in controlled
substances aboard vessels is a serious international problem and is
universally condemned[, and] . . . presents a specific threat to
the security . . . of the United States."  46 U.S.C. app.  1902.  
Therefore, application of the MDLEA to the defendants is consistent
with the protective principle of international law because Congress
has determined that all drug trafficking aboard vessels threatens
our nation's security.  See Martnez-Hidalgo, 993 F.2d at 1056
("Inasmuch as trafficking of narcotics is condemned universally by
law-abiding nations, we see no reason to conclude that it is
'fundamentally unfair' for Congress to provide for the punishment
of persons apprehended with narcotics on the high seas."); cf.Church v. Hubbart, 6 U.S. (2 Cranch) 187, 234-35 (1804) ("[A
nation's] power to secure itself from injury may certainly be
exercised beyond the limits of its territory.").
    We therefore hold that when individuals engage in drug
trafficking aboard a vessel, due process is satisfied when the
foreign nation in which the vessel is registered authorizes the
application of United States law to the persons on board the
vessel.  When the foreign flag nation consents to the application
of United States law, jurisdiction attaches under the statutory
requirements of the MDLEA without violation of due process or the
principles of international law because the flag nation's consent
eliminates any concern that the application of United States law
may be arbitrary or fundamentally unfair.
                               II
    The defendants contend that the district court removed
from the jury's consideration the jurisdictional element of the
MDLEA.  Although the district court stated during the defendant's
opening statements that there was jurisdiction, the court corrected
itself in its jury instructions.  The district court instructed the
jury that it was required to find jurisdiction beyond a reasonable
doubt.  In addition, the district court explicitly corrected its
earlier mistake, instructing the jury that it had "to make an
independent final determination as to whether there is jurisdiction
or not in this case" regardless of the court's earlier comments.  
Cf. Richardson v. Marsh, 481 U.S. 200, 206 (1987) (assuming that
jurors follow instructions); Arthur D. Little, Inc. v. Dooyang
Corp., 147 F.3d 47, 53 (1st Cir. 1998) (same).  Therefore, the
district court did not take from the jury the MDLEA's
jurisdictional element.
                              III
    The defendants contend that the district court erred by
denying their Rule 29 motions for judgment of acquittal based on
the sufficiency of the evidence.  We will reverse the district
court's denial of the defendants' Rule 29 motions only if, viewing
the evidence in the light most favorable to the government and
drawing all reasonable inferences in support of the verdict, no
rational jury could find guilt beyond a reasonable doubt.  SeeUnited States v. Marrero-Ortiz, 160 F.3d 768, 772 (1st Cir. 1998).  
The government presented sufficient evidence to prove that all
three defendants (1) were on board a vessel subject to the
jurisdiction of the United States, (2) knowingly or intentionally
possessed marijuana, and (3) intended to distribute that marijuana.  
See Guerrero, 114 F.3d at 339.   
    First, the government introduced evidence from which the
jury reasonably could have found that the United States had
jurisdiction over the defendants.  The government introduced
testimony that the Venezuelan government authorized the Coast Guard
crew to board and search the CORSICA.  In addition, the Venezuelan
government authorized the United States to apply United States law
to the CORSICA's crew.  See 46 U.S.C. app.  1903(c)(1)(C).
    Second, the government introduced evidence from which the
jury reasonably could have found that the crew of the CORSICA had
possessed the bales of marijuana found floating in the ocean.  The
government introduced evidence that (1) there were impressions in
the CORSICA's carpet that matched the shape of the marijuana bales;
(2) there was yellow dye on the CORSICA's carpet that matched
yellow dye found in the bricks of marijuana; (3) there were
cardboard pieces and packing tape on board the CORSICA that matched
the materials used to package the marijuana; (4) the pieces of
plastic removed from the CORSICA's carpet matched the thickness and
type of plastic used to package the bales; (5) there was a piece of
what appeared to be a marijuana stem on the CORSICA that tested
positive for THC; and (6) a narcotics dog aboard the CORSICA
alerted Coast Guard officers to the presence of drugs.  In
addition, the government introduced testimony that traced the bales
found floating in the water to the location of the CORSICA at the
time the bales were allegedly thrown overboard.
    In addition, the government introduced sufficient
evidence from which the jury reasonably could infer that the
defendants knowingly possessed the marijuana.  The government
demonstrated that the defendants evaded the Coast Guard helicopter
for over two hours, turning off their navigation lights when it got
dark, failing to respond to radio contact even though their radio
was working, and refusing to allow the Coast Guard crew to board
when finally stopped.  See United States v. Leuro-Rosas, 952 F.2d
616, 622 (1st Cir. 1991); United States v. Piedrahita-Santiago, 931
F.2d 127, 131 (1st Cir. 1991); United States v. Passos-Paternina,
918 F.2d 979, 985 (1st Cir. 1990).  The government demonstrated
that the CORSICA was riding low in the water, suggesting that the
CORSICA was laden with illegal cargo.  See Piedrahita-Santiago, 931
F.2d at 131.  The government demonstrated that the defendants tried
to mask the presence of the marijuana by pouring gasoline on the
CORSICA's deck.  See United States v. Romero, 32 F.3d 641, 645 (1st
Cir. 1994). The government demonstrated that the CORSICA was
carrying a large amount of marijuana relative to its size.  SeePiedrahita-Santiago, 931 F.2d at 131; United States v. Cueva-
Esquivel, 905 F.2d 510, 515 (1st Cir. 1990).  The government
demonstrated that the defendants had traveled a great distance to
reach the location where they were spotted.  See Piedrahita-
Santiago, 931 F.2d at 131; United States v. Corpus, 882 F.2d 546,
550 (1st Cir. 1989).  The government demonstrated that the
defendants shared close relationships with each other because the
three of them were on board a boat that was only forty-two feet
long, they were all Colombians, and they worked closely together to
operate the CORSICA.  See Cuevas, 905 F.2d at 515.  Finally, the
government demonstrated that the marijuana recovered had a street
value of up to $8 million.  See Passos-Paternina, 918 F.2d at 985.
    Third, the government introduced evidence from which the
jury reasonably could infer that the defendants intended to
distribute the marijuana.  The government demonstrated that
lookouts aboard the GROVES spotted over twenty bales floating in
the water.  The crew of the GROVES recovered seventeen of the
bales, which contained over 1080 pounds of marijuana.  The jury
reasonably could infer from the quantity of marijuana recovered
that the defendants intended to distribute the marijuana.  SeeGuerrero, 114 F.3d at 344; United States v. Echeverri, 982 F.2d
675, 678 (1st Cir. 1993).

                               IV
    Peterson contends that the district court erred by
denying his motion for a mistrial under Rule 16 of the Federal
Rules of Criminal Procedure and Brady v. Maryland, 373 U.S. 83
(1963), based on the government's failure to disclose pretrial a
laboratory report that showed that the CORSICA's carpet tested
negative for marijuana and THC.  During the government's direct
examination of one of its witnesses, the witness disclosed for the
first time the existence of a laboratory test showing that the
CORSICA's carpet tested negative for the presence of marijuana and
THC.  The defendants objected to this testimony, but the test was
admitted into evidence and the defendants were provided with a copy
of the test for the first time.
    We will reverse the district court's denial of Peterson's
motion for a mistrial based on the alleged Brady violation only if
the district court abused its discretion.  See United States v.Devin, 918 F.2d 280, 289-90 (1st Cir. 1990).  In the case of
delayed disclosure, we examine whether Peterson's "'counsel was
prevented by the delay from using the disclosed material
effectively in preparing and presenting'" Peterson's case.  SeeUnited States v. Catano, 65 F.3d 219, 227 (1st Cir. 1995) (quoting
United States v. Ingraldi, 793 F.2d 408, 411-12 (1st Cir. 1986)).  
We find that the district court did not abuse its discretion
because Peterson's counsel effectively used the report during the
presentation of Peterson's case.
    Peterson's counsel effectively cross-examined the
government witness who disclosed the report, and used the test
results in its closing argument.  See Catano, 65 F.3d at 227.  
Peterson's counsel did not attempt to recall any of the
government's earlier witnesses.  In addition, Peterson's counsel
failed to request a continuance, indicating that she was not
prejudiced by the delayed disclosure.  See United States v.Innamorati, 996 F.2d 456, 480 (1st Cir. 1993); Ingraldi, 793 F.2d
at 411-12.   
                               V
    Peterson contends that the district court erred by
failing to ask all potential jurors about any positive bias they
might have held toward the testimony of law enforcement officers.  
However, this bias inquiry was requested with respect to only two
prospective jurors, and the district court made the requested
inquiry in both instances.  Because Peterson failed to make this
request with respect to all prospective jurors, we review this
issue only for plain error.  See United States v. Olano, 507 U.S.
725, 732 (1993).
    We decline to adopt a rule requiring trial courts to make
a routine inquiry into the possible bias all prospective jurors
might have toward law enforcement testimony because it would
"establish a per se rule that is simply inconsistent with the broad
deference traditionally and wisely granted trial courts in their
conduct of voir dire."  See United States v. Lancaster, 96 F.3d
734, 740-41 (4th Cir. 1996) (en banc); see also United States v.Gonzlez-Soberal, 109 F.3d 64, 69 (1st Cir. 1997) (giving
substantial deference to district court's conduct of voir dire);
United States v. Medina, 761 F.2d 12, 20 (1st Cir. 1985) (giving
trial court broad discretion in conduct of voir dire).  Because the
district court did not err, there was no plain error.
    Peterson's reliance on United States v. Victoria-Peguero,
920 F.2d 77 (1st Cir. 1990), United States v. Anagnos, 853 F.2d 1
(1st Cir. 1988), and United States v. Pappas, 639 F.2d 1 (1st Cir.
1980), is misplaced because in each of those cases the defendant's
counsel specifically requested the judge to make the bias inquiry,
and the judge refused to do so.  As stated above, Peterson's
counsel made that request with respect to only two jurors, and the
district court complied with both requests.
                               VI
    Peterson contends that the district court erred by
refusing to instruct the jury not to give greater credibility to
the testimony of government agents than to the testimony of
nongovernment witnesses.  We review the district court's jury
instructions for abuse of discretion, "to determine whether the
charge, taken as a whole fairly and adequately submit[s] the issues
in the case to the jury."  United States v. Roberts, 119 F.3d 1006,
1016 (1st Cir. 1997) (citation omitted).  The district court did
not err.
    Peterson never proposed a jury instruction on the
credibility of law enforcement witnesses.  Cardales, however,
orally requested that the court give "the pattern instruction for
the Fifth Circuit or the one in Devitt & Blackmar for law
enforcement witnesses."  Neither one of these two sources, however,
contains an instruction on the credibility of law enforcement
witnesses.  The district court could not have erred by refusing to
give a nonexistent instruction.
    Even if one of the defendants had submitted a credibility
instruction, the district court would not have abused its
discretion by denying it.  The district court instructed the jury
that it was the sole judge of the credibility of the witnesses, and
that in evaluating the credibility of a witness it should consider
whether the witness had any relationship with the government or the
defense.  Taken as a whole, the district court's instructions
fairly and adequately submitted the case to the jury.  See United
States v. Angiulo, 897 F.2d 1169, 1208 (1st Cir.), cert. denied,
498 U.S. 845 (1990).  The district court's instructions were
therefore proper.
                              VII
    Peterson contends that the district court abandoned its
role of judicial neutrality and therefore deprived him of his right
to a fair trial by striking the defendant's opening statement and
by asking witnesses misleading and one-sided questions.  We will
find judicial bias only if a reading of the entire record leaves us
with an abiding impression that the judge substantially intervened.
See Cruz-Paulino, 61 F.3d 986, 997 (1st Cir. 1995); United States
v. Twomey, 806 F.2d 1136, 1141 (1st Cir. 1986).  Upon a careful
review of the entire record, we are left with no abiding impression
of judicial bias.
                              VIII
    Peterson contends that the district court made a series
of erroneous evidentiary rulings, the cumulative effect of which
denied Peterson his right to a fair trial.  We review each of the
district court's evidentiary rulings for abuse of discretion, and
then examine Peterson's cumulative error claim.  See Williams v.Drake, 146 F.3d 44, 46 (1st Cir. 1998).  The district court did not
abuse its discretion.
    First, Peterson contends that the district court erred by
denying his motion in limine to exclude evidence of his prior
deportation from Puerto Rico.  Peterson's unlawful entry into
Puerto Rico was relevant to show Peterson's character for
truthfulness, and was therefore admissible to impeach Peterson on
cross-examination.  See Fed. R. Evid. 608(b); cf. United States v.Cambindo-Valencia, 609 F.2d 603, 633-34 (2d Cir. 1979).  The
district court, therefore, did not err by denying Peterson's motion
in limine.
    Second, Peterson contends that the district court erred
by preventing his trial counsel from refreshing the recollection of
one of the government's witnesses.  However, the district court
merely prevented Peterson's counsel from repeatedly and improperly
asking, "Has your recollection been refreshed?" to impeach the
government's witness when the witness had never indicated that he
did not recall his previous statements.  The district court did not
otherwise prevent Peterson's counsel from legitimately refreshing
the recollection of this witness.
    Third, Peterson contends that the district court erred by
permitting the government to refresh the recollection of one of its
witnesses during redirect examination.  The district court did not
abuse its discretion when, after Officer Epps testified that his
report did not mention a field test on a marijuana stem, it allowed
the government to refresh Epps' recollection by showing Epps his
report indicating that he had field tested a marijuana stem.  Cf.United States v. Williams, 105 F.3d 740, 742 (1st Cir.) (refreshing
recollection by reading reports of interviews given to FBI agents),
cert. denied, 117 S. Ct. 2424 (1997).
    Fourth, Peterson contends that the district court erred
by not permitting Peterson to refresh the recollection of one of
the government's witnesses during cross examination.  The district
court did not abuse its discretion when it denied Peterson's
request to refresh Officer Langevin's recollection with log books
Langevin did not prepare when Langevin could not recall whether
Epps had field tested a piece of cardboard or some other material.  
See United States v. Boyd, 606 F.2d 792, 794 (8th Cir. 1979); cf.NLRB v. Federal Dairy Co., 297 F.2d 487, 489 n.3 (1st Cir. 1962)
(forbidding misuse of written aids).  
    Fifth, Peterson contends that the district court erred by
allowing one of the government's witnesses to testify about
corroborating evidence of the defendant's guilt.  The district
court did not err by permitting Officer Taravela to testify about
the corroborating evidence because Cardales' counsel asked Taravela
about the cause for the defendants' arrests, thereby opening the
door for the government to explore on redirect the grounds for the
arrests.  Cf. United States v. Ariza-Ibarra, 605 F.2d 1216, 1226
(1st Cir. 1979).
    Because we find that the district court did not err in
any of the evidentiary rulings challenged on appeal, Peterson's
cumulative error argument necessarily fails.
                               IX
    Peterson contends that the district court erred by
enhancing his sentence under U.S.S.G.  3C1.1 for obstruction of
justice based on a finding of perjury.  We will reverse the
district court's obstruction of justice sentencing enhancement only
if the district court clearly erred in finding that Peterson
committed perjury.  See United States v. McKeeve, 131 F.3d 1, 15
(1st Cir. 1997).  The district court did not err.
    The district court found that Peterson had committed
perjury when he testified that he had been hired to search for a
lost boat in the area where the helicopter crew spotted the
CORSICA.  The court found unbelievable the story that Peterson, who
claimed to be a salesman, had been hired to travel such a great
distance to conduct a less-than-two-hour search for the allegedly
missing boat, that the missing boat happened to get lost in an area
conducive to drug trafficking, and that Peterson's knowledge of the
CORSICA was deficient.  See United States v. Matiz, 14 F.3d 79, 84
(1st Cir. 1994) (defining elements of perjury as "falsity,
materiality, and willfulness").  Thus, the district court did not
err by enhancing Peterson's sentence for obstruction of justice.  
See U.S.S.G.  3C1.1, application note 1 (including as obstruction
of justice "a denial of guilt under oath that constitutes
perjury").
    Peterson's argument that the district court enhanced his
sentence merely for being convicted after testifying in his defense
is without merit.  The district court specifically stated that it
was not enhancing Peterson's sentence on that improper basis, and
engaged in a detailed discussion of the perjurious nature of
Peterson's testimony.
                           CONCLUSION
    Based on the foregoing, we affirm the judgment of the
district court.

</body>

</html>